UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ADANMA T.,
                          Plaintiff,

v.                                            5:20-CV-00173 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
 *Counsel for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.        CHRISTOPHER L. POTTER, ESQ.
 Counsel for Defendant
Social Security Administration
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER

      Currently before the Court, in this Social Security action filed by Adanma T. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or the "Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed and Plaintiff's complaint is dismissed.

I.     BACKGROUND

On January 20, 2017, Plaintiff protectively filed a Title II application for disability insurance benefits alleging disability beginning July 21, 2015. Administrative Transcript[1] at 16. Her claim was initially denied on April 6, 2017. *Id*. Thereafter, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. She subsequently appeared at an administrative hearing before ALJ Gretchen Mary Greisler on December 20, 2018. *Id.* Vocational expert ("VE") Linda N. Vause also testified. *Id.*

On February 19, 2019, the ALJ issued a written decision finding Plaintiff was not disabled. T. 16-27. The ALJ's decision followed the Social Security Administration's ("SSA") five-step sequential evaluation process for determining whether an adult is disabled. *See* 20 C.F.R. § 416.920(a). At step two, the ALJ found Plaintiff suffered from the following severe impairments: "a spine disorder and a mental impairment." T. 19. The ALJ concluded these severe impairments did not meet or medically equal one of the listed impairments. T. 19-20. Based on the above-stated impairments, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform less than light work with the following limitations:

> [she] can occasionally lift and carry up to 15 lbs. The claimant requires a brief 1-2-minute change in position after sitting, standing or walking for 30 minutes but retains the ability to remain on task. The claimant can occasionally and intermittently stoop, climb stairs and ramps, twist and bend at the waist, but this limitation does not affect claimant's ability to sit or remain seated. The claimant cannot crouch, crawl, kneel, climb ladders, ropes or scaffolds or work at unprotected heights or in close proximity to dangerous machinery. The claimant can tolerate occasional contact with coworkers, supervisors and the public and can perform simple routine and repetitive tasks in a work environment free of fast paced production requirements, involving simple,

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.

work-related decisions and few, if any, workplace changes.

T. 21. Given Plaintiff's RFC, the ALJ concluded she was not disabled because there were a significant number of jobs in the national economy she could perform. T. 26. Specifically, the ALJ noted the VE testified someone of Plaintiff's "age, education, work experience, and residual functional capacity" could perform work as a marker, a photocopying machine operator, or a routing clerk. T. 26.

Plaintiff sought review of the ALJ's decision to the Appeals Council. On December 18, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T. 1-6.

On February 19, 2020, Plaintiff timely filed a complaint in this Court seeking judicial review of the Commissioner's final decision. (Dkt. No. 1.) Pursuant to General Order 18, each party submitted supporting briefs that this Court treats as competing motions for judgment on the pleadings. (Dkt. Nos. 9, 11.)

Plaintiff contends the ALJ failed to consider medical evidence that suggested she suffered from knee pain. (Dkt. No. 9.) She argues that if the ALJ had appropriately considered the relevant evidence, then the ALJ would have concluded Plaintiff's knee pain was a separate serious impairment at step two of the sequential analysis. *Id*. at 9-10. Defendant acknowledges the ALJ did not mention the apparent knee pain, however, he maintains any error was harmless. (Dkt. No. 11.)

## II.     DISCUSSION

### A.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the Plaintiff's positions and despite that the court's independent analysis of the evidence

may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

    **B.**    **Standard for Benefits**[2]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the SSA promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or

---

[2]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### C.     Analysis

As noted above, Plaintiff contends the ALJ failed to consider medical evidence related to her apparent knee injury at any point in her decision. (Dkt. No. 9.) To that end, Plaintiff argues the ALJ ignored "MRI findings suggestive of a probable meniscal tear, diagnoses from a medical professional, and repeated objective findings regarding Plaintiff's left lower extremity pain." *Id*. at 10. Therefore, according to Plaintiff, if the ALJ had considered this medical evidence, then the ALJ would have concluded she suffered from a separate severe impairment at step two of the sequential analysis. *Id*.

Defendant, on the other hand, argues Plaintiff "fails to show that the lack of discussion of a knee impairment prejudiced her claim." (Dkt. No. 11 at 3.) For one, Defendant asserts the medical evidence Plaintiff highlights in her brief predates her disability onset date and the ALJ was not required to consider it in her decision. *Id*. at 3-4 (citing *James N. v. Comm'r of Soc. Sec.*, No. 3:18-cv-1324 (CFH), 2020 WL 1140498, at *5 (N.D.N.Y. Mar. 6, 2020) (noting that, "'[a]lthough it is within an ALJ's purview to consider pre-onset date evidence, it is not required.'")). Moreover, Defendant contends Plaintiff failed to prove that consideration of her knee injury would have reduced her already restrictive RFC. (Dkt. No. 11 at 4-5.) Therefore,

according to Defendant, the ALJ's failure to mention the knee injury is harmless and not a reason to vacate the ALJ's decision. For the reasons discussed below, the Court agrees with Defendant.

At the outset, the Court is skeptical that the ALJ committed any error in her analysis of Plaintiff's medical record. As Defendant points out, most of the evidence Plaintiff references in her argument pre-dates her alleged onset date or fails to establish any medically determinable knee impairment. For example, Dr. Klawitter's "diagnosis" was on May 6, 2015, T. 398, and the subsequent MRI was May 19, 2015. T. 377. Plaintiff's application for disability benefits alleges an onset date more than two months later, on July 21, 2015. T. 16. The only medical note within the relevant time frame is from Dr. Klawitter and it discusses his opinion that her meniscus tear was "asymptomatic and did not require surgery." T. 402. Less than a year later, Plaintiff's supposed knee impairment was listed only as part of her past medical history. T. 423.

Given this record, the Court is not convinced the ALJ committed any error. Nevertheless, even if the Court were to conclude the ALJ should have discussed Plaintiff's putative knee injury or found it to be a severe impairment at step two of the sequential evaluation, any error was harmless.

"Courts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings." *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014). Specifically, when an ALJ identifies some severe impairments at step two, and proceeds through sequential evaluation based on combined effects of all impairments, an error in failing to identify all severe impairments is harmless. *See Stanton v. Astrue*, 370 Fed. App'x 231, 233 n.1 (2d Cir.2010) (noting, in dicta, that there was no error by ALJ in finding disc herniation non-severe because

ALJ did identify other severe impairments at step two so that the claim proceeded though the sequential evaluation process and all impairments were considered in combination). In other words, a step-two error is harmless where the plaintiff cannot satisfy her "burden of proving that [the impairment] resulted in any greater limitations than those already included in the ALJ's RFC finding." *Oakes v. Colvin*, No. 5:13-cv-1374 LEK/TWD, 2015 WL 1959681, at *6 (N.D.N.Y. Apr. 29, 2015) (citations omitted). Thus, the key question in this case is whether Plaintiff demonstrated her knee injury would result in a functional limitation beyond those the ALJ already articulated in her RFC. *See Carlos R.C.G. v. Berryhill*, No. 5:17-cv-0781 (GTS), 2018 WL 4554495, at *6 (N.D.N.Y. Sept. 21, 2018) ("[A]part from vague recommendations to elevate his legs, there is no indication as to what the functional effect of this impairment and its symptoms would be, and no physician opines that this edema impacts Plaintiff's ability to stand or walk. . . . Consequently, any failure by the ALJ to more explicitly discuss the evidence related to this impairment, or in failing to find it severe, is harmless error because it would not change the ultimate outcome of the ALJ's decision."); *Orton v. Astrue*, No. 7:11-cv-630 (FJS/ATB), 2013 WL 3328025, at *9 (N.D.N.Y. July 2, 2013) ("Importantly, not only does the medical evidence in the record sparsely document Plaintiff's PTSD, but it also does not indicate functional limitations, if any, that this condition imposes.") (citation omitted).

Applying these standards, the evidence demonstrates Plaintiff's RFC included multiple limitations related to her spinal condition that effectively encompassed any additional limitations attributable to the knee. Plaintiff herself testified she experienced nearly identical symptoms related to her back and knee pain. To that end, when questioned about her back pain at the hearing, she explained she had "pain shooting up the left side going all the way down to my foot and I was losing sensation like I was going to fall all the time." T. 52. When asked about her

left knee pain during the hearing, she stated, "I feel like it is in a lot of pain and it feels like it is always weak and I'm always losing sensation." T. 53.

Furthermore, while the knee injury is not explicitly discussed in step two of the ALJ's decision, it was considered by Dr. Ferraccio and Dr. Stradley in their medical source statements. The ALJ gave the relevant portions of their opinions "great weight" and included the suggested limitations in her RFC. T. 24. Specifically, the ALJ credited Dr. Ferraccio's opinion relative to Plaintiff's "ability to perform light work with position changes, exertional limitations, postural limitations and environmental limitations" and added those limitations to the RFC. *Id*. Moreover, the ALJ found Plaintiff had "greater limitations" than those Dr. Stradley identified. *Id*. Critically, Dr. Stradley specifically reviewed evidence relative to Plaintiff's knee pain. T. 92 referring to T. 521, 545.[3]

Here, as noted above, the ALJ determined Plaintiff had the RFC to perform less than light work with significant additional limitations. For example, she required a brief one to two minute change in position after sitting, standing or walking for 30 minutes. T. 21. The ALJ also determined that Plaintiff can only occasionally and intermittently stoop, climb stairs and ramps, twist and bend at the waist. *Id*. Moreover, the ALJ found Plaintiff cannot crouch, crawl, kneel, climb ladders, ropes or scaffolds or work at unprotected heights or in close proximity to

---

[3] In an independent orthopedic evaluation, Dr. Ferraccio assessed Plaintiff's functional capabilities. Dr. Ferraccio determined that Plaintiff "may have some freedom to sit, stand or change position according to her level of discomfort with no more than occasional bending, stooping or twisting at the waist, intermittent of up to 15 pounds, pushing or pulling intermittently up to 20 pounds." T. 552. In reviewing Plaintiff's medical record, Dr. Ferraccio considered Plaintiff's back pain and left leg pain. T. 537. State agency medical consultant Shelly Lynn Stradley, D.O., determined that Plaintiff was capable of light work, with limitations on climbing, balancing, stooping, kneeling, crouching and crawling. T. 85-94. In reviewing the medical record, Dr. Stradley considered Plaintiff's back pain, left leg pain and left knee pain. T. 85-90. During the hearing, Plaintiff was asked about Dr. Ferraccio's assessment. T. 53. Plaintiff confirmed she can sit for 20 minutes without pain, can stand for 15-20 minutes without pain, can lift up to 15 pounds and can bend but has difficulty doing so. *Id*.

dangerous machinery. *Id*. These limitations are inclusive of both Plaintiff's back impairment and knee impairment. Here, Plaintiff cannot point to any additional functional limitation her knee impairment would cause that was not already incorporated into her RFC. Such a failure demonstrates any error in failing to consider the scant medical evidence related to her knee impairment is harmless.

### III.   CONCLUSION

In light of the foregoing, the Court finds substantial evidence supports the ALJ's decision.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, pursuant to Sentence Four of 42 § U.S.C. 405(g).

Dated: November 12, 2020
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge